IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE A. MULLINS &
WORLANDA F. MULLINS,

    Plaintiffs,        No. 2:13-cv-0453 JAM KJN PS

  v.

WELLS FARGO BANK, N.A.,

    Defendant.     <u>ORDER</u>

_____/

    Plaintiffs Bruce A. Mullins and Worlanda F. Mullins, proceeding without counsel, initially commenced this action in the Solano County Superior Court on January 30, 2013, asserting several federal and state law claims related to their residential home loan against defendant Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB ("Wells Fargo").  (<u>See</u> Complaint, Ex. A to Notice of Removal, ECF No. 1 at 18-36, ["Compl."].)[1]  Thereafter, on March 6, 2013, Wells Fargo removed the action to this court,

////

////

---

[1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

1  invoking the court's federal question and diversity of citizenship jurisdiction.  (ECF No. 1.)[2]

2  　　　　Subsequently, on March 20, 2013, Wells Fargo filed the instant motion to dismiss

3  plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 7.)  The

4  motion was initially noticed for hearing on May 2, 2013, but the hearing was later continued to

5  May 23, 2013, on the court's own motion.  (ECF Nos. 7, 9.)  On May 8, 2013, plaintiffs filed an

6  opposition to the motion, and Wells Fargo filed a reply brief on May 9, 2013.  (ECF. Nos. 10,

7  11.)

8  　　　　At the hearing on May 23, 2013, plaintiff Bruce A. Mullins appeared on behalf of

9  himself and his wife, plaintiff Worlanda F. Mullins, who was absent for medical reasons.

10  Attorney David Newman appeared telephonically on behalf of Wells Fargo.  After considering

11  the parties' briefs, the parties' oral arguments, and the applicable law, the court grants Wells

12  Fargo's motion to dismiss with leave to amend.

13  BACKGROUND

14  　　　　The background facts are taken from plaintiffs' operative complaint and certain

15  public records and government documents offered by Wells Fargo that are subject to judicial

16  notice.[3]  According to a deed of trust dated October 6, 2006, and recorded on October 13, 2006,

17  plaintiffs borrowed $446,000.00 from World Savings Bank, FSB,[4] pursuant to a written

18  promissory note and secured by a deed of trust on real property located at 3017 Overlook Drive,

19  Vallejo, California (the "Property"), where plaintiffs currently reside.  (See Compl. ¶ 1; Wells

21  _____

22  　　[2] Given that plaintiffs' complaint raises several federal claims, it clearly confers the court with federal question jurisdiction upon removal.  Thus, at least at this juncture, the court need not determine whether it also has diversity jurisdiction over the action.

24  　　[3] The court's analysis with respect to Wells Fargo's request for judicial notice in support of its motion to dismiss (ECF No. 8) is set forth in the "Discussion" section below.

25  　　[4] World Savings Bank, FSB later changed its name to Wachovia Mortgage, FSB, and
26  then underwent a second name change to Wells Fargo Bank Southwest, N.A. before merging with Wells Fargo Bank, N.A.  (Wells Fargo's Request for Judicial Notice, ECF No. 8, Ex. B.)

2

1   Fargo's Request for Judicial Notice, ECF No. 8 ["RJN"], Ex. A.)[5]  Plaintiffs allege that, although

2   they met the credit criteria for a prime fixed rate mortgage loan, World Savings (now Wells

3   Fargo), in events leading up to the origination of the loan, recommended that plaintiffs instead

4   opt for a "Pick-A-Pay" adjustable rate mortgage loan, suggesting that after plaintiffs' credit rating

5   increased over a couple of years, plaintiffs could refinance for an exceptional prime rate.

6   (Compl. ¶¶ 3-4.)

7           According to plaintiffs, they subsequently began to experience difficulties in

8   affording their monthly payments when the mortgage interest rate increased on a cyclical basis,

9   and the value of the Property also significantly diminished.  (Compl. ¶ 4.)  Plaintiffs were

10  apparently at one point offered a one-year trial modification of the loan, and were thereafter

11  presented with two (2) Loan Modification Options with incremental payment adjustments and

12  optional balloon payments.  (Id.)  Plaintiffs assert that the proposed modified principal balances

13  under these options provided them with no credit for monthly payments made over several past

14  years, and that they would never realize any equity value in their home.  (Id.)  Plaintiffs generally

15  assert that Wells Fargo had no intent of actually providing plaintiffs with a meaningful loan

16  modification.  (Id. ¶ 33.)  Additionally, plaintiffs claim that despite Wells Fargo reassuring them

17  that they were getting a loan modification, Wells Fargo was also actively foreclosing on the

18  Property.  (Id. ¶ 34.)  In that regard, plaintiffs further allege that Wells Fargo issued a Notice of

19  Default around July 2009, without first contacting plaintiffs to explore options to avoid

20  foreclosure in accordance with California Civil Code section 2923.5.  (Id. ¶¶ 43-46.)

21  _____

22      [5] By contrast, plaintiffs' complaint alleges that they borrowed $350,000.00 from World
    Savings, with a cash down payment of $100,000, and that a deed of trust was issued around April
23  4, 2003, and recorded around April 11, 2003.  (Compl. ¶ 3.)  Neither Wells Fargo nor plaintiffs
    addressed the discrepancies with respect to the dates and amounts in their briefing.  However, at
24  the hearing, plaintiff Bruce Mullins clarified that a new deed of trust was issued in 2006 based on
    a loan modification.  As such, it appears that the 2006 deed of trust, of which Wells Fargo
25  requested judicial notice, supplanted the 2003 deed of trust.  *In any amended complaint, although
    plaintiffs may set forth facts concerning the history of their loan since 2003 to the extent that
26  they are relevant to this case, plaintiffs shall also include facts regarding issuance of the
    operative 2006 deed of trust on which their claims are based.*

1    Plaintiffs also state that a mortgage loan forensic analysis and audits have revealed

2  a number of procedural improprieties with respect to the loan origination process, including with

3  respect to certain statements, notices, disclosures, and booklets that were either not in the loan

4  file, not provided to plaintiffs, or were not dated and signed properly.  (Compl. ¶¶ 7-15, 17.)

5  Plaintiffs state that they did not understand the loan documents they were signing and that they

6  were not encouraged to read them.  (Id. ¶ 16.)  Plaintiffs further include vague allegations

7  regarding "Improper Securitization" of the loan/note and "Improper Assignment" of the

8  mortgage or deed of trust.  (Id. ¶ 18.)

9    Based on these allegations, plaintiffs assert the following seven causes of action

10  for: (1) fraudulent inducement to breach of contract; (2) violation of the federal Truth in Lending

11  Act, 15 U.S.C. §§ 1601 et seq. ("TILA"); (3) fraud and conspiracy to commit fraud; (4) violation

12  of California Civil Code section 2923.5; (5) predatory lending in violation of TILA; (6) unlawful

13  business practices in violation of California Business and Professions Code section 17200,

14  predicated on violation of California Civil Code section 2923.5; and (7) fraudulent business

15  practices in violation of California Business and Professions Code section 17200, predicated on

16  violation of California Civil Code section 2923.5.  (Compl. ¶¶ 19-66.)  Liberally construed,

17  plaintiffs' complaint, in addition to these explicitly stated causes of action, also purports to assert

18  claims for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq.

19  ("RESPA") and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq. ("ECOA").  (See,

20  e.g., Compl. ¶¶ 7-15.)

21    As noted above, after removing the action to federal court, Wells Fargo filed the

22  instant motion to dismiss.

23  DISCUSSION

24    Legal Standard

25    A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

26  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

1   Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

2   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

3   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

4   also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

5   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

6   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

7   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

8   factual content that allows the court to draw the reasonable inference that the defendant is liable

9   for the misconduct alleged."  Id.

10          In considering a motion to dismiss for failure to state a claim, the court accepts all

11  of the facts alleged in the complaint as true and construes them in the light most favorable to the

12  plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

13  however, required to accept as true conclusory allegations that are contradicted by documents

14  referred to in the complaint, and [the court does] not necessarily assume the truth of legal

15  conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

16  1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

17  prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

18  to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

19  Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

20  Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

21  particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

22  & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

23  evaluating them under the standard announced in Iqbal).

24          In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may

25  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

26  and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

1   Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

2   the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

3   determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

4   151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

5   in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

6   (9th Cir. 2003).

7              With these principles in mind, the court now turns to Wells Fargo's motion to

8   dismiss.

9              Wells Fargo's Request for Judicial Notice

10             After reviewing Wells Fargo's request for judicial notice in support of its motion

11  to dismiss, the court grants it in part and denies it in part.  "The court may judicially notice a fact

12  that is not subject to reasonable dispute because it: (1) is generally known within the trial court's

13  territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

14  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial

15  notice of "matters of public record."  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

16  2001).

17             The court takes judicial notice of Exhibit A to the request for judicial notice, a

18  deed of trust dated October 6, 2006, because it was recorded in the official records of the Solano

19  County Recorder's office and is thus a public record whose accuracy cannot reasonably be

20  questioned.  For the same reasons, the court also takes judicial notice of Exhibit B to the request

21  for judicial notice, which consists of various certificates, letters, and other official documents

22  from government agencies and government websites, including the Office of Thrift Supervision

23  in the Department of Treasury, the Office of the Comptroller of the Currency, and the Federal

24  Deposit Insurance Corporation.  However, the court declines to take judicial notice of Exhibit C,

25  which is a Property Profile Report from Chicago Title Company, purportedly showing that no

26  Notice of Default has been recorded against the Property.  Although Wells Fargo contends that

1    this document is a "document reflecting official acts of the executive branch of the County of

2    Alameda," whose authenticity is not subject to reasonable dispute, (ECF No. 8 at 3), the

3    document itself is neither an official government document nor a recorded public record, but

4    instead a record from a private company. As such, it is not the proper subject of judicial notice.

5                          TILA Claims (Causes of Action Two and Five)

6             In support of their TILA claims, plaintiffs allege that Wells Fargo violated TILA

7    by failing to provide plaintiffs with certain required disclosures and/or notices at the time of the

8    loan's origination. (Compl. ¶¶ 8-10, 27.) Wells Fargo argues that any TILA claim is time

9    barred.

10            Any action for damages under TILA must generally be brought within one year of

11   the consummation of the loan transaction. See 15 U.S.C. § 1640(e); Meyer v. Ameriquest

12   Mortgage Co., 342 F.3d 899, 902 (9th Cir. 2003); King v. California, 784 F.2d 910, 913 (9th Cir.

13   1986). Any action for rescission under TILA must be brought within three years of the

14   consummation of the loan transaction. See 15 U.S.C. § 1635(f)("An obligor's right of rescission

15   shall expire three years after the date of consummation of the transaction...."); 12 C.F.R. §

16   226.2(a)(13) ("Consummation means the time that a consumer becomes contractually obligated

17   on a credit transaction"); see also King, 784 F.2d at 913.

18            In this case, the transaction was consummated in October 2006 (RJN, Ex. A), and

19   plaintiffs only commenced this action in 2013. As such, plaintiffs' TILA claims are time barred

20   absent the proper invocation of equitable tolling.

21            Wells Fargo correctly notes that the three-year limitations period for a rescission

22   claim under TILA is absolute and not subject to equitable tolling. See Beach v. Ocwen Federal

23   Bank, 523 U.S. 410, 412 (1998) ("§ 1635(f) completely extinguishes the right of rescission at the

24   end of the 3-year period."); Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir.

25   2002) (holding that "§ 1635(f) is a statute of repose, depriving the courts of subject matter

26   jurisdiction when a § 1635 claim is brought outside the three-year limitation period."); King, 784

7

1   F.2d at 913 (holding that TILA claim for rescission of home loan was barred by the "three-year

2   absolute limitation on rescission actions" set out in 15 U.S.C. § 1635(f)).  Therefore, any claim

3   for rescission under TILA should be dismissed and cannot be cured by further amendment.

4            By contrast, the one-year limitations period for damages claims under TILA is not

5   absolute.  In <u>King</u>, the Ninth Circuit Court of Appeals held as follows:

> [W]e hold that the limitations period in Section 1640(e) runs from
> the date of consummation of the transaction but that the doctrine of
> equitable tolling may, in the appropriate circumstances, suspend
> the limitations period until the borrower discovers or had
> reasonable opportunity to discover the fraud or nondisclosures that
> form the basis of the TILA action.  Therefore, as a general rule the
> limitations period starts at the consummation of the transaction.
> The district courts, however, can evaluate specific claims of
> fraudulent concealment and equitable tolling to determine if the
> general rule would be unjust or frustrate the purposes of the Act
> and adjust the limitations period accordingly.

12  <u>King</u>, 784 F.2d at 915.

13           "Equitable tolling is generally applied in situations where the claimant has

14  actively pursued his judicial remedies by filing a defective pleading during the statutory period,

15  or where the complainant has been induced or tricked by his adversary's misconduct into

16  allowing the filing deadline to pass."  <u>O'Donnell v. Vencor, Inc.</u>, 465 F.3d 1063, 1068 (9th Cir.

17  2006) (citation and quotation marks omitted).  "Equitable tolling may be applied if, despite all

18  due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his

19  claim...If a reasonable plaintiff would not have known of the existence of a possible claim within

20  the limitations period, then equitable tolling will serve to extend the statute of limitations for

21  filing suit until the plaintiff can gather what information he needs."  <u>Santa Maria v. Pacific Bell</u>,

22  202 F.3d 1170, 1178 (9th Cir. 2000) (overruled on other grounds) (citation and quotation marks

23  omitted).

24           In <u>Meyer</u>, the Ninth Circuit explained that the mere fact that required disclosures

25  under TILA were not made, or were insufficient for purposes of TILA, is not in itself enough to

26  apply equitable tolling:

8

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed. The [plaintiffs] have produced no evidence of undisclosed credit terms, or of fraudulent concealment or other action on the part of [the lender] that prevented the [plaintiffs] from discovering their claim.

Meyer, 342 F.3d at 902. As another district court reasoned:

> Assuming, for purposes of the motions before the court, that [the lender's] acts violated TILA, plaintiff had the information he needed to discover and bring an action regarding the alleged wrongs more than three years before filing suit...Nothing in the [operative complaint] suggests that plaintiff was prevented from comparing his loan documents and disclosures with TILA statutory and regulatory requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996). Nor did plaintiff plead facts demonstrating that equitable tolling is warranted under the circumstances, such as facts showing that he actively pursued his judicial remedies by filing a defective pleading during the statutory period, was induced or tricked by defendants' misconduct into allowing the filing deadline to pass, or was unable to obtain vital information bearing on the existence of his TILA claim, despite all due diligence.

Rosal v. First Fed. Bank of California, 671 F. Supp. 2d 1111, 1123 (N.D. Cal. 2009); see also Scholar v. Pacific Bell, 963 F.2d 264, 267-68 (9th Cir. 1992) (noting that equitable tolling allows relief from a statute of limitations in "extreme cases" and that courts "have been generally unforgiving...when a late filing is due to the claimant's failure to exercise due diligence in preserving his legal rights."). "Fairness, without more, is not sufficient justification to invoke equitable tolling...." Garcia v. Brockway, 526 F.3d 456, 466 (9th Cir. 2008).

In this case, plaintiffs' complaint merely alleges that equitable tolling should be applied to their TILA claim, because "[a]ny and all statutes of limitations relating to disclosures and notices for client pursuant to 15 US 1601 *et seq* were tolled due to the hidden nature of this violation which did not reveal itself until within the past year." (Compl. ¶ 28.) This allegation is entirely conclusory and insufficient to invoke the application of equitable tolling. Plaintiffs do not provide any specific facts as to why they were unable to discover the alleged TILA violations

1    until within the past year.  Nor do plaintiffs allege any specific facts indicating that Wells Fargo

2    attempted to conceal the alleged inadequacy of required notices or disclosures, or otherwise make

3    a showing of extraordinary circumstances that would warrant the application of equitable tolling.

4           Therefore, the court dismisses plaintiffs' TILA claim for damages, but with leave

5    to amend.  In any amended complaint, plaintiffs shall set forth, in a single cause of action, the

6    specific TILA violations that Wells Fargo allegedly committed, the facts in support of those

7    alleged violations, when and how plaintiffs became aware of those violations, and specific facts

8    explaining why plaintiffs were unable to discover the alleged TILA violations within the one-

9    year limitations period.  Any amended complaint shall not include a TILA claim for rescission,

10   which would be clearly time barred for the reasons discussed above.

11           RESPA Claim

12           Plaintiffs' complaint alleges that Wells Fargo violated RESPA by failing to

13   provide certain information and/or documentation to plaintiffs at or before the closing of the loan

14   transaction.  (Compl. ¶¶ 11-15.)  Wells Fargo argues that plaintiffs' RESPA claim is time barred.

15           "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title

16   may be brought in the United States district court or in any other court of competent jurisdiction,

17   for the district in which the property involved is located, or where the violation is alleged to have

18   occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the

19   case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the

20   violation...."  12 U.S.C. § 2614.

21           Because plaintiffs' allegations involve Wells Fargo's alleged failure to provide

22   certain information and/or documentation to plaintiffs at or before the closing of the loan

23   transaction, any alleged RESPA violation occurred at that time.  See Metcalf v. Drexel Lending

24   Group, 2008 WL 4748134, at *3 (S.D. Cal. Oct. 29, 2008) ("Typically, in cases involving loan

25   documents, the statute begins to run when the documents are signed....")  Furthermore, even

26   though it is not exactly clear under which section(s) of RESPA plaintiffs' claim arises, plaintiffs'

1    RESPA claim would appear to be time barred regardless of whether the one-year or three-year

2    limitations period under 12 U.S.C. § 2614 is applied, given that any RESPA violation allegedly

3    occurred at or before the closing of plaintiffs' loan in October 2006 and plaintiffs did not bring

4    this action until 2013.  (RJN, Ex. A.)

5            Although the Ninth Circuit apparently has not addressed the issue of whether

6    equitable tolling is available under RESPA, several California federal district courts have

7    determined that it may be invoked in the context of a RESPA claim.  See Rosal, 671 F. Supp. 2d

8    at 1125 (collecting several cases).  However, even assuming that equitable tolling is available,

9    plaintiffs failed to allege sufficient facts demonstrating entitlement to equitable tolling for the

10   same reasons stated above with respect to the TILA claim.

11           Accordingly, plaintiffs' RESPA claim is dismissed, but with leave to amend.  In

12   any amended complaint, plaintiffs shall set forth, in a single cause of action, the specific RESPA

13   violations that Wells Fargo allegedly committed, whether those violations arise under sections

14   2605, 2607, and/or 2608 of that statute, the facts in support of those alleged violations, when and

15   how plaintiffs became aware of those violations, and specific facts explaining why plaintiffs were

16   unable to discover the alleged RESPA violations within the applicable limitations period.

17           Wells Fargo also correctly notes that plaintiffs failed to allege facts showing that

18   they suffered any actual damages as a result of a RESPA violation.  See Garcia v. Wachovia

19   Mortg. Corp., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009); Lemieux v. Litton Loan Serv., LP,

20   2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009); Molina v. Washington Mut. Bank, 2010 WL

21   431439, at *7 (S.D. Cal. Jan. 29, 2010).  Conclusory allegations of damages, unsupported by any

22   facts, are insufficient.  Garcia, 676 F. Supp. 2d at 909.  Accordingly, in any amended complaint,

23   plaintiffs shall also specifically allege what damages are attributable to Wells Fargo's alleged

24   RESPA violation(s).

25           ECOA Claim

26           Plaintiffs' complaint only makes some passing references to ECOA without

11

alleging any facts in support of a claim under that statute.  (Compl. ¶¶ 7, 17.)  ECOA prohibits a

creditor from discriminating "against any applicant, with respect to any aspect of a credit

transaction – (1) on the basis of race, color, religion, national origin, sex or marital status, or

age...; (2) because all or part of the applicant's income derives from any public assistance

program; or (3) because the applicant has in good faith exercised any right under this chapter."

15 U.S.C. § 1691(a).  To state a claim of discrimination under ECOA, a plaintiff "must allege

that: (1) she is a member of a protected class; (2) she applied for credit with [the defendant]; (3)

she qualified for credit; and (4) she was denied credit despite being qualified."  Hafiz v.

Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).  The applicable

statute of limitations for an ECOA claim is five years, which runs from the "date of the

occurrence of the violation."  15 U.S.C. § 1691e(f).

          As an initial matter, plaintiffs' complaint completely fails to explain why ECOA

is applicable to this action.  Not only have plaintiffs not alleged that they are members of a

protected class, but they have not alleged that Wells Fargo has taken an "adverse action" against

them.  For example, there are no allegations that plaintiffs were denied a loan because they were

African American, whereas similarly situated non-African American applicants were granted

loans.  To the contrary, plaintiffs allege that Wells Fargo (or its predecessor) extended them a

loan.  Although they allege that Wells Fargo engaged in various types of misconduct, and

committed several violations of other statutes, with respect to the loan, there is no indication in

the complaint that Wells Fargo took an "adverse action" against plaintiffs for purposes of ECOA.

          Additionally, even if plaintiffs could conceivably state an ECOA violation, it

would be time barred, because this action was filed in 2013, more than five years after the loan

transaction occurred in 2006.  (RJN, Ex. A.)  Furthermore, for the same reasons discussed above,

plaintiffs' complaint provides no facts to support invocation of the doctrine of equitable tolling.

Hafiz, 652 F. Supp. 2d at 1045.

////

1    Although the court has grave doubts that plaintiffs could allege a cognizable claim

2 under ECOA, the court will nonetheless dismiss the claim with leave to amend, if plaintiffs can

3 do so in good faith within the strictures of Federal Rule of Civil Procedure 11.  If plaintiffs elect

4 to include an ECOA claim in any amended complaint, they shall allege specific facts in support

5 of the alleged ECOA violation(s) and shall explain why they were unable to discover such

6 violation(s) within the applicable limitations period.

7    <u>Claim for Violation of California Civil Code section 2923.5  (Fourth Cause of</u>

8 <u>Action)</u>

9    Plaintiffs' complaint alleges that Wells Fargo failed to follow the requirements of

10 California Civil Code section 2923.5, such as the requirement to contact plaintiff and explore

11 options to avoid foreclosure, prior to recording a notice of default on the Property.  (Compl. ¶¶

12 39-50.)  Wells Fargo correctly contends that any such claim is preempted by the Home Owners'

13 Loan Act, 12 U.S.C. §§ 1461 et seq. ("HOLA").

14    Judicially-noticed facts show, and plaintiffs do not dispute, that at the time that

15 plaintiffs consummated their loan with World Savings Bank, FSB (Wells Fargo's predecessor),

16 World Savings was a federal savings bank under the authority of the Office of Thrift Supervision.

17 (RJN, Ex. B.)  Plaintiffs' loan is therefore subject to HOLA, even though present-day Wells

18 Fargo is not chartered as a federal savings bank.  See <u>DeLeon v. Wells Fargo Bank, N.A.</u>, 729 F.

19 Supp. 2d 1119, 1126 (N.D. Cal. 2010) ("Wells Fargo notes that at the time the loan was made to

20 the DeLeons, World Savings Bank, FSB was a federally chartered savings bank organized and

21 operating under HOLA and observes correctly that the same preemption analysis would apply to

22 any alleged conduct after November 1, 2009, when the lender merged into a national banking

23 association."); <u>Osorio v. Wachovia Mortg., FSB</u>, 2012 WL 1610110, at *3 (S.D. Cal. May 8,

24 2012) ("Because Plaintiff's loan originated with World Savings Bank, FSB, which was a federal

25 savings bank, Plaintiff's action is governed by HOLA.").

26 ////

1    The applicable regulations provide for HOLA preemption of state laws that

2 purport to impose upon a federal savings bank any requirements regarding, *inter alia*,

3 "processing, origination, servicing, sale or purchase of, or investment or participation in,

4 mortgages." 12 C.F.R. § 560.2(b)(10).  Numerous federal district courts in California have held

5 that claims for violation of California Civil Code section 2923.5 are preempted by HOLA,

6 because they fall within the scope of 12 C.F.R. § 560.2(b)(10).  See Taguinod v. World Savings

7 Bank, FSB, 755 F. Supp. 2d 1064, 1073-74 (C.D. Cal. 2010) (collecting cases).  Accordingly,

8 plaintiffs' claim for violation of California Civil Code section 2923.5 should be dismissed and

9 cannot be cured by further amendment.  In light of this conclusion, the court finds it unnecessary

10 to reach Wells Fargo's alternative argument that plaintiffs' claim is also barred by the applicable

11 statute of limitations.[6]

12    Claims under California Business and Professions Code sections 17200 et seq.

13 (Sixth and Seventh Causes of Action)

14    Plaintiffs' claims for violation of California Business and Professions Code

15 sections 17200 et seq. are expressly predicated on the alleged violation of California Civil Code

16 section 2923.5.  Because that underlying claim is preempted, the section 17200 claims are

17 likewise subject to dismissal.

18    Fraud Claims (First and Third Causes of Action)

19    In support of their fraud claims, plaintiffs appear to allege that Wells Fargo made

20 false statements and misrepresentations in the context of the loan origination as well as during

21 the loan modification process.  (See, e.g., Compl. ¶¶ 4, 19-25, 32-38.)

22 ////

23

24    [6] Wells Fargo, in reliance on Exhibit C to the request for judicial notice, further argues
that in fact no notice of default had been recorded on the property.  However, for the reasons
25 discussed above, the court cannot take judicial notice of Exhibit C to the request for judicial
notice, and the court accepts plaintiffs' allegation regarding the July 2009 Notice of Default as
26 true for purposes of this motion to dismiss.

14

1    Wells Fargo contends that plaintiffs' fraud claims do not meet the heightened

2  pleading requirements under Federal Rule of Civil Procedure 9(b).  That argument has merit.

3    "The elements of a California fraud claim are: (1) misrepresentation (false

4  representation, concealment or nondisclosure); (2) knowledge of the falsity (or 'scienter'); (3)

5  intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."

6  Altman v. PNC Mortg., 850 F. Supp. 2d 1057, 1068-69 (E.D. Cal. 2012) (citing Lazar v.

7  Superior Ct., 12 Cal. 4th 631, 638 (1996)).  When pleading a fraud-based claim, the claim must

8  meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which states:

9  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

10  fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be

11  alleged generally."  Fed. R. Civ. P. 9(b).  As the Ninth Circuit has explained:

12      Rule 9(b) requires particularized allegations of the circumstances
        *constituting* fraud.  The time, place, and content of an alleged
13      misrepresentation may identify the statement or the omission
        complained of, but these circumstances do not "constitute" fraud.
14      The statement in question must be false to be fraudulent.
        Accordingly, our cases have consistently required that
15      circumstances indicating falseness be set forth...[W]e [have]
        observed that plaintiff must include statements regarding the time,
16      place, and *nature* of the alleged fraudulent activities, and that
        "mere conclusory allegations of fraud are insufficient."...[W]e
17      [have] required plaintiffs to set forth "specific descriptions of the
        representations made, and *the reasons for their falsity*."...To allege
18      fraud with particularity, a plaintiff must set forth *more* than the
        neutral facts necessary to identify the transaction.  The plaintiff
19      must set forth what is false or misleading about a statement, and
        why it is false.

20

21  In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc)

22  (emphasis in original), superseded by statute on other grounds as stated in Marksman Partners,

23  L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D. Cal. 1996); see also Cooper v. Pickett,

24  137 F.3d 616, 627 (9th Cir. 1997) (noting that fraud claims must be accompanied by the "who,

25  what, when, where, and how" concerning the misconduct).

26  ////

1    Plaintiffs' allegations of fraud in their complaint are plainly deficient, because

2    although plaintiffs make reference to some alleged misrepresentations, they do not specify in any

3    detail the contents of the alleged misrepresentations, who made the alleged misrepresentations,

4    when and where the alleged misrepresentations were made, and why the statements were false.

5    Accordingly, plaintiffs' fraud claims are dismissed, but with leave to amend to state a claim in

6    accordance with Federal Rule of Civil Procedure 9(b) and the principles discussed above.

7    Wells Fargo also argues that any fraud claim is time barred.  The statute of

8    limitations for a fraud claim in California is three years.  Cal. Civ. Proc. Code § 338(d).  Such a

9    claim "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts

10   constituting the fraud...."  Id.; see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 206 (9th

11   Cir. 1991) (noting that "under the California statute of limitations for fraud, the three-year period

12   does not begin to run until the plaintiff has actual or constructive notice of the facts constituting

13   the fraud.").  "Plaintiffs are charged with presumptive knowledge of an injury if they have

14   information of circumstances to put them on inquiry or if they have the opportunity to obtain

15   knowledge from sources open to their investigation."  Rosal, 671 F. Supp. 2d at 1131 (citing Fox

16   v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807-08 (2005)).

17   Here, due to the fact that plaintiffs only commenced this action in January 2013,

18   plaintiffs' fraud-based claims would be time barred if plaintiffs had actual or constructive notice

19   of any fraud prior to January 2010.  Because it is unclear from plaintiff's complaint when exactly

20   the alleged misrepresentations occurred and when plaintiffs discovered the alleged fraud, the

21   court is presently unable to determine whether plaintiffs' fraud claims are time barred.  In any

22   amended complaint, in addition to clarifying when any misrepresentations or false statements

23   were made, plaintiffs shall also state when and how they discovered the alleged fraud (i.e., the

24   falsity of such statements), and if appropriate, why they were unable to discover the alleged fraud

25   earlier.

26   ////

16

1            Finally, Wells Fargo also contends that plaintiffs' fraud claims are preempted by

2    HOLA.  Again, due to the imprecise nature of plaintiffs' fraud allegations, the court is unable to

3    make a determination regarding HOLA preemption at this juncture.  HOLA's preemption of state

4    laws affecting federal savings associations is not absolute.  Regulations specifically exempt state

5    laws that "only *incidentally* affect the lending operations of Federal savings associations...."  12

6    C.F.R. § 560.2(c) (emphasis added).  Because the court cannot presently make a determination as

7    to the specific scope and effect of plaintiffs' fraud claims, the court reserves decision as to any

8    HOLA preemption until plaintiffs' fraud allegations are better articulated.

9                        References to Improper Securitization/Improper Assignment

10           As noted above, plaintiffs' complaint also contains vague allegations regarding

11   "Improper Securitization" of the loan/note and "Improper Assignment" of the mortgage or deed

12   of trust.  (Compl. ¶ 18.)  Although these allegations cannot be construed as independent claims in

13   themselves, but instead as theories on which some other claims may be based, the court

14   nevertheless briefly addresses these allegations.

15           With respect to plaintiffs' allegations of improper assignment, judicially

16   noticeable documents reveal that the original lender, World Savings Bank, FSB, later changed its

17   name to Wachovia Mortgage, FSB, and then underwent a second name change to Wells Fargo

18   Bank Southwest, N.A. before merging with Wells Fargo Bank, N.A., as discussed above.  (See

19   RJN, Ex. B.)  Therefore, Wells Fargo simply succeeded to World Savings Bank, FSB's interest

20   in plaintiffs' loan.  See Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1035 (N.D.

21   Cal. 2010) (employing a similar analysis with respect to transfers between these entities);

22   Logvinov v. Wells Fargo Bank, 2011 WL 6140995, at *2 (N.D. Cal. Dec. 9, 2011) (accord).

23           Furthermore, in regard to the allegations of improper securitization, courts have

24   repeatedly rejected claims asserting that a foreclosing entity lacks standing as a result of

25   securitization of the loan.  See Krug v. Wells Fargo Bank, N.A., 2011 WL 6182341, at *2 (N.D.

26   Cal. Dec. 13, 2011) ("Krug contends that as a result of his loan having been securitized and the

1   particular manner in which that was done, the entities now seeking to foreclose lack standing to

2   do so, either because they in fact do not have the legal right to enforce the security obligation, or

3   because, at a minimum, they have not established that they have such a right.  These same basic

4   arguments have repeatedly been rejected by the courts in this jurisdiction."); Hafiz, 652 F. Supp.

5   2d at 1043 ("Hafiz asserts that defendants have no right to foreclose...based on the erroneous

6   theory that all defendants lost their power of sale pursuant to the deed of trust when the original

7   promissory note was assigned to a trust pool...California law does not require possession of the

8   note as a precondition to non-judicial foreclosure under a deed of trust."); Logvinov, 2011 WL

9   6140995, at *3 ("The argument that parties lose their interest in a loan when it is assigned to a

10  trust pool or REMIC has been rejected by numerous courts.").

11          Accordingly, any claims based on theories of improper assignment or

12  securitization of the loan lack merit and cannot be cured by further amendment.

13          <u>Leave to Amend</u>

14          Consistent with the above discussion, the court grants plaintiffs leave to file an

15  amended complaint asserting the following claims against defendant Wells Fargo: (1) violation

16  of TILA (damages claim only); (2) violation of RESPA; (3) violation of ECOA; and (4) fraud.

17          However, nothing in this order requires plaintiffs to include all of these claims in

18  any amended complaint.  If plaintiffs conclude that they cannot assert a particular claim(s) in

19  good faith in accordance with Federal Rule of Civil Procedure 11 or the requirements of this

20  order, such a claim(s) may be omitted from any amended complaint.  Plaintiffs are cautioned that

21  the inclusion in any amended complaint of a claim that is preempted or time barred will result in

22  the issuance of findings and recommendations for dismissal of such claim.

23          If plaintiffs elect to file an amended complaint, the amended complaint shall be

24  filed within 28 days of this order and shall be captioned "Plaintiffs' First Amended Complaint."

25  Plaintiffs are informed that the court cannot refer to a prior complaint in order to make plaintiff's

26  amended complaint complete.  Local Rule 220 requires that an amended complaint be complete

1  in itself without reference to any prior pleading.  As a general rule, an amended complaint

2  supersedes the original complaint, and once the amended complaint is filed, the original

3  complaint no longer serves any function in the case.

4        Alternatively, if plaintiffs do not wish to continue pursuing the case, they may

5  instead file a notice of voluntary dismissal of their claims without prejudice pursuant to Rule

6  41(a)(1)(A)(i) of the Federal Rules of Civil Procedure within 28 days of this order.

7        Failure to file either an amended complaint or a notice of voluntary dismissal

8  within 28 days of this order may result in a recommendation that the action be dismissed with

9  prejudice pursuant to Federal Rule of Civil Procedure 41(b).

10 CONCLUSION

11       Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

12       1.  Wells Fargo's request for judicial notice (ECF No. 8) is granted in part and

13 denied in part.

14       2.  Wells Fargo's motion to dismiss (ECF No. 7) is granted, but with leave to

15 amend.

16       3.  Plaintiffs shall file an amended complaint in accordance with this order within

17 28 days.  Alternatively, plaintiffs may file a notice of voluntary dismissal of their claims without

18 prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure within 28 days.

19       4.  Failure to file either an amended complaint or a notice of voluntary dismissal

20 within 28 days of this order may result in a recommendation that the action be dismissed with

21 prejudice pursuant to Federal Rule of Civil Procedure 41(b).

22       IT IS SO ORDERED.

23 DATED:  May 24, 2013

24       _____
         KENDALL J. NEWMAN
25       UNITED STATES MAGISTRATE JUDGE

26