1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRUCE A. MULLINS & WORLANDA F.              No.  2:13-cv-0453 JAM KJN PS
     MULLINS,
12
                    Plaintiffs,
13                                                ORDER AND
         v.
14                                                FINDINGS AND RECOMMENDATIONS

15   WELLS FARGO BANK, N.A.,

16                  Defendant.

17

18   INTRODUCTION

19          Presently pending before the court is a motion to dismiss plaintiffs Bruce A. Mullins and

20   Worlanda F. Mullins' ("plaintiffs") first amended complaint pursuant to Federal Rules of Civil

21   Procedure 12(b)(6) and 9(b), filed by defendant Wells Fargo Bank, N.A., successor by merger

22   with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly

23   known as World Savings Bank, FSB ("Wells Fargo").[1]  (ECF No. 18.)  The motion was initially

24   noticed for a hearing on August 15, 2013.  (Id.)  After plaintiffs failed to file an opposition to the

25   motion in accordance with Local Rule 230(c), the court vacated that hearing on August 5, 2013,

26

27   _____
     [1] This action proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28
28   U.S.C. § 636(b)(1).

                                                   1

1   noting that Local Rule 230(c) specifically provides that "[n]o party will be entitled to be heard in

2   opposition to a motion at oral arguments if opposition to the motion has not been timely filed by

3   that party…." (ECF No. 21.)  The court further observed that:

> Although plaintiffs are proceeding without counsel, this is not their
> first round of motions practice before this court, and at the previous
> hearing on defendant's first motion to dismiss plaintiffs' original
> complaint, plaintiffs were cautioned to familiarize themselves with
> the   Local   Rules   and   the   Federal   Rules   of   Civil
> Procedure…Consistent with the above authorities, the court could
> at this juncture recommend summary dismissal of plaintiffs' claims
> based on their failure to prosecute the case and failure to follow the
> court's Local Rules.  Nevertheless, in light of plaintiffs' pro se
> status and the court's desire to resolve plaintiffs' claims on the
> merits, the court finds it appropriate to grant plaintiffs a *brief and
> final extension of time* to file a written opposition to defendant's
> motion.

11  (ECF No. 21.)  Thereafter, on August 15, 2013, plaintiffs filed an opposition to Wells Fargo's

12  motion, and on August 21, 2013, Wells Fargo filed a reply brief, whereupon the motion was

13  submitted upon the record and briefs on file pursuant to Local Rule 230(g).  (ECF Nos. 22, 23.)

14       After considering the parties' briefing, the court's record, and the applicable law, the court

15  recommends that Wells Fargo's motion to dismiss be granted and that the action be dismissed

16  with prejudice.

17  BACKGROUND

18       The background facts are taken from plaintiffs' operative first amended complaint and

19  certain public records and government documents offered by Wells Fargo that are subject to

20  judicial notice.[2]  According to a deed of trust dated October 6, 2006, and recorded on October 13,

21  2006, plaintiffs borrowed $446,000.00 from World Savings Bank, FSB[3] pursuant to a written

22  promissory note and secured by a deed of trust on real property located at 3017 Overlook Drive,

23  Vallejo, California (the "Property"), where plaintiffs currently reside.  (See First Amended

24  Complaint, ECF No. 16-1 ["FAC"] ¶ 1; Wells Fargo's Request for Judicial Notice, ECF No. 19

---

25  [2]  The court's analysis with respect to Wells Fargo's request for judicial notice in support of its
26  motion to dismiss (ECF No. 19) is set forth in the "Discussion" section below.

27  [3]  World Savings Bank, FSB later changed its name to Wachovia Mortgage, FSB, and then
    underwent a second name change to Wells Fargo Bank Southwest, N.A. before merging with
28  Wells Fargo Bank, N.A.  (Wells Fargo's Request for Judicial Notice, ECF No. 19, Ex. C.)

["RJN"], Ex. B.)[4]  Plaintiffs allege that, although they met the credit criteria for a prime fixed rate mortgage loan, World Savings (now Wells Fargo), in events leading up to the origination of the loan, recommended that plaintiffs instead opt for a "Pick-A-Pay" adjustable rate mortgage loan, suggesting that after plaintiffs' credit rating increased over a couple of years, plaintiffs could refinance for an exceptional prime rate.  (FAC ¶¶ 3-4.)[5]

Plaintiffs state that, at the time of the loan origination, Wells Fargo failed to provide plaintiffs with "accurate and clear and conspicuous material disclosures required under TILA and fail[ed] to fully inform Plaintiffs of the pros and cons of the mortgage presented for final approval, fail[ed] to properly disclose the interest rate on the loan, and more."  (FAC ¶ 17.) According to plaintiffs, the loan "was marketed in a way that failed to fully disclose all material [terms]," and contained terms that were "inherently unfair, fraudulent or unconscionable."  (Id. ¶ 43.)  The loan documents purportedly did not "plainly and prominently disclose the good faith estimate of closing costs, the site of a yield spread premium paid directly or indirectly, in whole or in part to a mortgage loan officer."  (Id. ¶ 44.)  Plaintiffs further include vague allegations

[4] By contrast, plaintiffs' first amended complaint alleges that they borrowed $350,000.00 from World Savings, with a cash down payment of $100,000, and that a deed of trust was issued around April 4, 2003, and recorded around April 11, 2003.  (FAC ¶ 3.)  At the previous hearing on Wells Fargo's first motion to dismiss the original complaint, plaintiff Bruce Mullins clarified that a new deed of trust was issued in 2006 based on a loan modification.  As such, the 2006 deed of trust, of which Wells Fargo requested judicial notice, supplanted the 2003 deed of trust.  In its previous order granting Wells Fargo's first motion to dismiss with leave to amend, the court specifically instructed plaintiffs as follows: "*In any amended complaint, although plaintiffs may set forth facts concerning the history of their loan since 2003 to the extent that they are relevant to this case, plaintiffs shall also include facts regarding issuance of the operative 2006 deed of trust on which their claims are based*." (ECF No. 15 at 3 n.5) (emphasis in original).  Plaintiffs failed to comply with that order.  Nevertheless, in light of the judicially noticed documents and plaintiff Bruce Mullins's representations at the prior hearing, the court will construe plaintiffs' claims as based on the 2006 deed of trust.  Such construction does not alter the court's substantive analysis of plaintiffs' claims.  Indeed, construing plaintiffs' claims as based on the 2006 deed of trust, as opposed to the 2003 deed of trust, is an interpretation more favorable to plaintiffs with respect to statute of limitations issues.

[5] Elsewhere in the complaint, plaintiffs allege that their loan was for a fixed interest rate of 6.125%.  (FAC ¶ 8.)  The note itself indicates that the loan had a fixed interest rate of 7.450%, but was a "Pick-A-Payment" loan, whereby Wells Fargo and plaintiffs apparently agreed to a specific initial monthly payment, which was to increase on certain dates in the future according to formulae specified in the note.  (RJN, Ex. A.)

1  regarding "Improper Securitization" of the loan/note and "Improper Assignment" of the mortgage

2  or deed of trust.  (Id. ¶ 8.)

3        According to plaintiffs, they subsequently began to experience difficulties in affording

4  their monthly payments when the mortgage interest rate increased on a cyclical basis, and the

5  value of the Property also significantly diminished.  (FAC ¶ 4.)  Plaintiffs were apparently at one

6  point offered a one-year trial modification of the loan, and were thereafter presented with two (2)

7  Loan Modification Options with incremental payment adjustments and optional balloon

8  payments.  (Id.)  Plaintiffs allege that the proposed modified principal balances under these

9  options provided them with no credit for monthly payments made over several past years, and

10  that they would never realize any equity value in their home.  (Id.)

11        Plaintiffs generally assert that Wells Fargo had no intent of actually providing plaintiffs

12  with a meaningful loan modification.  (FAC ¶ 23.)  Additionally, plaintiffs claim that despite

13  Wells Fargo reassuring them that they were getting a loan modification, Wells Fargo was also

14  actively foreclosing on the Property.  (Id. ¶ 24.)  In that regard, plaintiffs further allege that Wells

15  Fargo issued a Notice of Default around July 2009, without first contacting plaintiffs to explore

16  options to avoid foreclosure in accordance with California Civil Code section 2923.5.  (Id. ¶¶ 33-

17  36.)

18        Based on very similar allegations, plaintiffs' original complaint asserted seven causes of

19  action for: (1) fraudulent inducement to breach of contract; (2) violation of the federal Truth in

20  Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"); (3) fraud and conspiracy to commit fraud; (4)

21  violation of California Civil Code section 2923.5; (5) predatory lending in violation of TILA; (6)

22  unlawful business practices in violation of California Business and Professions Code section

23  17200, predicated on violation of California Civil Code section 2923.5; and (7) fraudulent

24  business practices in violation of California Business and Professions Code section 17200,

25  predicated on violation of California Civil Code section 2923.5.  (Original Complaint, ECF No. 1

26  ["Orig. Compl."], ¶¶ 19-66.)  The court also liberally construed the original complaint to assert

27  claims for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq.

28  ("RESPA") and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq. ("ECOA").

On May 28, 2013, the court granted Wells Fargo's motion to dismiss, but also granted plaintiffs leave to amend as to specified claims, in particular, plaintiffs' claims for: (1) violation of TILA (damages claim only); (2) violation of RESPA; (3) violation of ECOA; and (4) fraud. (ECF No. 15.)  In light of plaintiffs' pro se status, and because the original complaint's allegations were vague, meandering, and deficient, the court's order attempted to focus plaintiffs' attention on the potentially viable claims and provided plaintiffs with detailed instruction regarding the legal requirements of stating such claims.  (Id.)

Unfortunately, in filing their first amended complaint on June 25, 2013, plaintiffs failed to take account of the court's instructions and instead submitted a very similar shotgun pleading, which failed to cure the identified deficiencies and merely added additional claims beyond the scope of the leave to amend.  At times, inconsistent allegations and irrelevant content suggest that portions of the first amended complaint were merely copied from briefs or pleadings in other unrelated cases.  Plaintiffs' first amended complaint asserts claims for: (1) fraudulent inducement to breach of contract; (2) violation of TILA; (3) fraud and conspiracy to commit fraud; (4) violation of California Civil Code section 2923.5; (5) predatory lending in violation of TILA; (6) unlawful business practices in violation of California Business and Professions Code section 17200, predicated on violation of California Civil Code section 2923.5; (7) fraudulent business practices in violation of California Business and Professions Code section 17200, predicated on violation of California Civil Code section 2923.5; (8) fraudulent business practices in violation of California Business and Professions Code section 17200, predicated on violation of California Civil Code section 2923.5;[6] (9) violation of the Fair Credit Reporting Act; (10) defamation; (11) false light; (12) breach of contract; and (13) declaratory/injunctive relief.  (See generally FAC.)

For the reasons discussed below, the court finds that these claims should be dismissed, and that granting further leave to amend is unwarranted and would be futile.

////

---

[6] The allegations in the seventh and eighth causes of action for fraudulent business practices in violation of California Business and Professions Code section 17200 appear to be substantially similar.

5

1    DISCUSSION

2            Legal Standard

3            A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

4    challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

5    Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

6    of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

7    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

8    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

9    a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

10   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

11   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

12   factual content that allows the court to draw the reasonable inference that the defendant is liable

13   for the misconduct alleged."  Id.

14           In considering a motion to dismiss for failure to state a claim, the court accepts all of the

15   facts alleged in the complaint as true and construes them in the light most favorable to the

16   plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

17   however, required to accept as true conclusory allegations that are contradicted by documents

18   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

19   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

20   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

21   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

22   to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

23   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

24   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

25   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

26   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

27   evaluating them under the standard announced in Iqbal).

28   ////

6

1        In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

2   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

3   matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

4   F.3d 895, 899 (9th Cir. 2007).  Although the court may not consider a memorandum in opposition

5   to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see

6   Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider

7   allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g.,

8   Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

9        With these principles in mind, the court now turns to Wells Fargo's motion to dismiss.

10       Wells Fargo's Request for Judicial Notice

11       The court grants Wells Fargo's request for judicial notice in support of its motion to

12   dismiss.  "The court may judicially notice a fact that is not subject to reasonable dispute because

13   it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately

14   and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

15   Evid. 201(b).  A court may take judicial notice of "matters of public record."  Lee v. City of Los

16   Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Additionally, a court "may consider evidence on

17   which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the

18   document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy

19   attached to the 12(b)(6) motion."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

20       In this case, the court takes judicial notice of Exhibit A to the request for judicial notice, a

21   mortgage note dated October 6, 2006, and signed by plaintiffs.  Although the note is not a

22   recorded public document and is not expressly referred to by name in the first amended

23   complaint, it is clearly referenced by plaintiffs' complaint as evidence of a loan central to

24   plaintiffs' claims.  Furthermore, even though plaintiffs claim that the note and loan violated

25   numerous laws, they have not questioned the authenticity of the document itself.  Thus, the court

26   may take judicial notice of the note as evidence on which the complaint necessarily relies.  The

27   court also takes judicial notice of Exhibit B to the request for judicial notice, a deed of trust dated

28   October 6, 2006, because it was recorded in the official records of the Solano County Recorder's

1    office and is thus a public record whose accuracy cannot reasonably be questioned.  Finally, the

2    court takes judicial notice of Exhibit C to the request for judicial notice, which consists of various

3    certificates, letters, and other official documents from government agencies and government

4    websites, including the Office of Thrift Supervision in the Department of Treasury, the Office of

5    the Comptroller of the Currency, and the Federal Deposit Insurance Corporation.  These likewise

6    constitute sources whose accuracy cannot reasonably be questioned.

7        Based on this record, the court proceeds to consider plaintiffs' substantive claims.

8        TILA claims (Second and Fifth Causes of Action)

9        Plaintiffs allege that Wells Fargo violated TILA by failing to provide plaintiffs with

10    certain required disclosures, notices, and/or proper loan documentation at the time of the loan's

11    origination.  (FAC ¶¶ 17, 43-44.)  Wells Fargo again argues that any TILA claim is time barred.

12        Any action for damages under TILA must generally be brought within one year of the

13    consummation of the loan transaction.  See 15 U.S.C. § 1640(e); Meyer v. Ameriquest Mortgage

14    Co., 342 F.3d 899, 902 (9th Cir. 2003); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).

15    Any action for rescission under TILA must be brought within three years of the consummation of

16    the loan transaction.  See 15 U.S.C. § 1635(f)("An obligor's right of rescission shall expire three

17    years after the date of consummation of the transaction...."); 12 C.F.R. § 226.2(a)(13)

18    ("Consummation means the time that a consumer becomes contractually obligated on a credit

19    transaction"); see also King, 784 F.2d at 913.

20        In this case, the transaction was consummated in October 2006 (RJN, Exs. A, B), and

21    plaintiffs only commenced this action in 2013.  As such, plaintiffs' TILA claims are time barred

22    absent the proper invocation of equitable tolling.

23        Wells Fargo correctly notes that the three-year limitations period for a rescission claim

24    under TILA is absolute and not subject to equitable tolling.  See Beach v. Ocwen Federal Bank,

25    523 U.S. 410, 412 (1998) ("§ 1635(f) completely extinguishes the right of rescission at the end of

26    the 3-year period."); Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002)

27    (holding that "§ 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction

28    when a § 1635 claim is brought outside the three-year limitation period."); King, 784 F.2d at 913

(holding that TILA claim for rescission of home loan was barred by the "three-year absolute limitation on rescission actions" set out in 15 U.S.C. § 1635(f)).  Therefore, as the court previously explained, any TILA rescission claim in this case is time barred and cannot be cured by amendment.

By contrast, the one-year limitations period for damages claims under TILA is not absolute.  In King, the Ninth Circuit Court of Appeals held as follows:

> [W]e hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purposes of the Act and adjust the limitations period accordingly.

King, 784 F.2d at 915.

"Equitable tolling is generally applied in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir. 2006). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim...If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs."  Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) (overruled on other grounds).

In Meyer, the Ninth Circuit explained that the mere fact that required disclosures under TILA were not made, or were insufficient for purposes of TILA, is not in itself enough to apply equitable tolling:

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The [plaintiffs] were in full possession of all information relevant to the discovery of a

> TILA violation and a § 1640(a) damages claim on the day the loan papers were signed.  The [plaintiffs] have produced no evidence of undisclosed credit terms, or of fraudulent concealment or other action on the part of [the lender] that prevented the [plaintiffs] from discovering their claim.

Meyer, 342 F.3d at 902.  As another district court reasoned:

> Assuming, for purposes of the motions before the court, that [the lender's] acts violated TILA, plaintiff had the information he needed to discover and bring an action regarding the alleged wrongs more than three years before filing suit...Nothing in the [operative complaint] suggests that plaintiff was prevented from comparing his loan documents and disclosures with TILA statutory and regulatory requirements.  *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996).  Nor did plaintiff plead facts demonstrating that equitable tolling is warranted under the circumstances, such as facts showing that he actively pursued his judicial remedies by filing a defective pleading during the statutory period, was induced or tricked by defendants' misconduct into allowing the filing deadline to pass, or was unable to obtain vital information bearing on the existence of his TILA claim, despite all due diligence.

Rosal v. First Fed. Bank of California, 671 F. Supp. 2d 1111, 1123 (N.D. Cal. 2009); see also

Scholar v. Pacific Bell, 963 F.2d 264, 267-68 (9th Cir. 1992) (noting that equitable tolling allows

relief from a statute of limitations in "extreme cases" and that courts "have been generally

unforgiving...when a late filing is due to the claimant's failure to exercise due diligence in

preserving his legal rights.").  "Fairness, without more, is not sufficient justification to invoke

equitable tolling...."  Garcia v. Brockway, 526 F.3d 456, 466 (9th Cir. 2008).

In its previous order granting Wells Fargo's motion to dismiss with leave to amend, the

court outlined the above-mentioned principles regarding equitable tolling and specifically

instructed plaintiffs that:

> [i]n any amended complaint, plaintiffs shall set forth, in a single cause of action, the specific TILA violations that Wells Fargo allegedly committed, the facts in support of those alleged violations, when and how plaintiffs became aware of those violations, and specific facts explaining why plaintiffs were unable to discover the alleged TILA violations within the one-year limitations period.  Any amended complaint shall not include a TILA claim for rescission, which would be clearly time barred for the reasons discussed above.

(ECF No. 15 at 10.)  However, in drafting their first amended complaint, plaintiffs entirely

ignored the court's instructions and virtually verbatim repeated their prior allegations in support

of the TILA claims, including their allegation that "[a]ny and all statutes of limitations relating to disclosures and notices for client pursuant to 15 US 1601 *et seq* were tolled due to the hidden nature of this violation ,which did not reveal itself until within the past year." (<u>Compare</u> Orig. Compl. ¶ 28 <u>with</u> FAC ¶ 18.)  As the court previously noted, such an allegation is entirely conclusory and insufficient to invoke the application of equitable tolling.  Plaintiffs do not provide any specific facts as to why they were unable to discover the alleged TILA violations until within the past year.  Nor do plaintiffs allege any specific facts indicating that Wells Fargo attempted to conceal the alleged inadequacy of required notices or disclosures, or otherwise make a showing of extraordinary circumstances that would warrant the application of equitable tolling.

Therefore, plaintiffs' TILA claims should be dismissed.  Plaintiffs have already been provided with an opportunity to amend these claims after being advised of the requirements to state a TILA damages claim and invoke equitable tolling, but failed to make any effort to conform their pleading to those requirements.  As such, the court recommends that the TILA claims be dismissed with prejudice.

### Fraud Claims (First and Third Causes of Action)

As noted above, plaintiffs allege that Wells Fargo made false statements and misrepresentations in the context of the loan origination as well as during the loan modification process.  Plaintiffs also suggest, in conclusory fashion, that they were fraudulently induced to breach their contract with Wells Fargo by certain statements made by Wells Fargo.  (<u>See, e.g.</u>, FAC ¶¶ 4, 9-15, 22-28.)  Although not entirely clear from plaintiffs' complaint, this may be a reference to plaintiffs' allegation elsewhere in the complaint that Wells Fargo suggested that plaintiffs intentionally withhold payments to qualify for some relief program.  (<u>Id.</u> ¶ 6.)

Wells Fargo contends, as it did in its motion to dismiss plaintiffs' original complaint, that plaintiffs' fraud claims do not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  That argument has merit.

"The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  <u>Altman v. PNC</u>

Mortg., 850 F. Supp. 2d 1057, 1068-69 (E.D. Cal. 2012) (citing Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996)).  When pleading a fraud-based claim, the claim must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  As the Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth...[W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient."...[W]e [have] required plaintiffs to set forth "specific descriptions of the representations made, and *the reasons for their falsity*."...To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.

In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D. Cal. 1996); see also Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (noting that fraud claims must be accompanied by the "who, what, when, where, and how" concerning the misconduct).

After outlining the above-mentioned principles in its previous order granting Wells Fargo's motion to dismiss with leave to amend, the court noted that plaintiffs' allegations of fraud in the original complaint were plainly deficient.  The court explained that although plaintiffs made reference to some alleged misrepresentations, they did not specify in any detail the contents of the alleged misrepresentations, who made the alleged misrepresentations, when and where the alleged misrepresentations were made, and why the statements were false.  However, the court granted plaintiffs leave to amend to state a fraud claim in accordance with Federal Rule of Civil Procedure 9(b) and the above-mentioned case law.

Plaintiffs' first amended complaint failed to cure these deficiencies, and largely restated verbatim the allegations contained in the original complaint.  (Compare Orig. Compl. ¶¶ 19-25, 32-38 with FAC ¶¶ 9-15, 22-28.)  Although the pleading makes oblique references to fraudulent statements allegedly made by some unknown Wells Fargo representative, at some unknown time, at some unknown place, and by some unknown method of communication, the first amended complaint does not contain particularized allegations regarding the "who, what, when, where, and how" concerning the fraud.  As such, plaintiffs' fraud claims are subject to dismissal for failure to comply with Federal Rule of Civil Procedure 9(b).

Wells Fargo also argues that any fraud claim is time barred.  The statute of limitations for a fraud claim in California is three years.  Cal. Civ. Proc. Code § 338(d).  Such a claim "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud...."  Id.; see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 206 (9th Cir. 1991) (noting that "under the California statute of limitations for fraud, the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.").  "Plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation."  Rosal, 671 F. Supp. 2d at 1131 (citing Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807-08 (2005)).

Here, due to the fact that plaintiffs only commenced this action in January 2013, plaintiffs' fraud-based claims would be time barred if plaintiffs had actual or constructive notice of any fraud prior to January 2010.  Given plaintiffs' allegations that Wells Fargo issued a Notice of Default around July 2009 and that plaintiffs experienced significant difficulties with their loan by that time, it seemed unlikely that plaintiffs were not on actual or constructive notice of any fraud involved in the loan origination or loan modification process prior to January 2010. Nevertheless, due to the lack of specificity of plaintiffs' fraud allegations, the court previously granted plaintiff leave to amend and an opportunity to plead facts showing that their fraud claims were not time barred, as the original complaint at least facially suggested.  In particular, the court instructed plaintiffs as follows:

> In any amended complaint, in addition to clarifying when any misrepresentations or false statements were made, plaintiffs shall also state when and how they discovered the alleged fraud (i.e., the falsity of such statements), and if appropriate, why they were unable to discover the alleged fraud earlier.

(ECF No. 15 at 16.)  Plaintiffs failed to comply with the court's instruction, and as noted above, largely restated their prior allegations without change.  Thus, on the face of the complaint, it appears that plaintiffs' fraud claims are also time barred.

Therefore, the court recommends that plaintiffs' fraud claims be dismissed with prejudice for failure to comply with Federal Rule of Civil Procedure 9(b), or alternatively, because they are time barred.  Because plaintiffs failed to cure the deficiencies with respect to the fraud claims despite the court's previous detailed instructions, the court finds that further leave to amend would be futile.

Other Claims

Given that plaintiffs were only given leave to amend to assert claims for: (1) violation of TILA (damages claim only), (2) violation of RESPA, (3) violation of ECOA, and (4) fraud, plaintiffs' remaining claims exceed the scope of permissible amendment and are subject to dismissal on that basis.  See Tholmer v. Pliler, 2008 WL 2415384, at *1 (E.D. Cal. June 12, 2008) (unpublished) (striking complaint for exceeding the scope of permissible amendment); see also Crane v. Yarborough, 2012 WL 1067965, at *13 n.14 (C.D. Cal. Feb. 6, 2012) (unpublished); PB Farradyne, Inc. v. Peterson, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (unpublished).

Moreover, even if the court were inclined to grant plaintiffs leave to amend to assert additional claims, the proposed claims are defective and should be dismissed for the reasons outlined below.

*Claim for Violation of California Civil Code section 2923.5 (Fourth Cause of Action)*

Plaintiffs' first amended complaint again alleges that Wells Fargo failed to follow the requirements of California Civil Code section 2923.5, such as the requirement to contact plaintiff and explore options to avoid foreclosure, prior to recording a Notice of Default on the Property.

14

In connection with this claim, plaintiffs request that the court declare the alleged July 2009 Notice of Default null and void.  (FAC ¶¶ 29-40.)  As the court previously explained, any claim based on California Civil Code section 2923.5 in this case is preempted by the Home Owners' Loan Act, 12 U.S.C. §§ 1461 et seq. ("HOLA").

Judicially-noticed facts show, and plaintiffs do not dispute, that at the time that plaintiffs consummated their loan with World Savings Bank, FSB (Wells Fargo's predecessor), World Savings was a federal savings bank under the authority of the Office of Thrift Supervision.  (RJN, Ex. C.)  Plaintiffs' loan is therefore subject to HOLA, even though present-day Wells Fargo is not chartered as a federal savings bank.  See DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) ("Wells Fargo notes that at the time the loan was made to the DeLeons, World Savings Bank, FSB was a federally chartered savings bank organized and operating under HOLA and observes correctly that the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association."); Osorio v. Wachovia Mortg., FSB, 2012 WL 1610110, at *3 (S.D. Cal. May 8, 2012) ("Because Plaintiff's loan originated with World Savings Bank, FSB, which was a federal savings bank, Plaintiff's action is governed by HOLA.").

The applicable regulations provide for HOLA preemption of state laws that purport to impose upon a federal savings bank any requirements regarding, inter alia, "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(10).  Numerous federal district courts in California have held that claims for violation of California Civil Code section 2923.5 are preempted by HOLA, because they fall within the scope of 12 C.F.R. § 560.2(b)(10).  See Taguinod v. World Savings Bank, FSB, 755 F. Supp. 2d 1064, 1073-74 (C.D. Cal. 2010) (collecting cases).

Accordingly, plaintiffs' claim for violation of California Civil Code section 2923.5 is preempted by HOLA and should be dismissed.

### *Claims under California Business and Professions Code sections 17200 et seq. (Sixth, Seventh, and Eighth Causes of Action)*

Plaintiffs' claims for violation of California Business and Professions Code sections

17200 et seq. are expressly predicated on the alleged violation(s) of California Civil Code section 2923.5.  (FAC ¶¶ 47-59.)  See Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) ("By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.").  However, because that underlying claim is preempted for the reasons discussed above, the section 17200 claims should likewise be dismissed.

Furthermore, to the extent that the section 17200 claims can also be construed as based on plaintiffs' allegations of fraud (in particular the seventh and eighth causes of action ,which reference "fraudulent business practices," as opposed to the "unlawful business practices" referenced in the sixth cause of action), they are subject to dismissal for the same reasons stated above with respect to plaintiffs' fraud claims.  "Where a plaintiff chooses to allege fraudulent conduct and relies on such conduct as the basis for its UCL claim, the claim is grounded in or sounds in fraud such that its pleading as a whole must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b)."  Bias v. Wells Fargo & Co., 2013 WL 1787158, at *9 (N.D. Cal. Apr. 25, 2013) (citing Yess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) and Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)).

*Claims for Violation of the Fair Credit Reporting Act, Defamation, and False Light (Ninth, Tenth, and Eleventh Causes of Action)*

These claims are based on plaintiffs' allegations that Wells Fargo falsely reported to credit reporting agencies that plaintiffs were delinquent on their loan obligations.  (FAC ¶¶ 60-81.)  As an initial matter, these claims consist mostly of legal conclusions and do not contain even minimal factual information as to when the alleged false reports were made, when plaintiffs learned about the false reports, etc.

More troubling, however, is the fact that the allegations of false reports of delinquency to the credit agencies are inconsistent with other portions of plaintiffs' first amended complaint.  For example, plaintiffs contend elsewhere in that pleading that they were "getting so far behind" with their mortgage payments that they were forced to drain their savings accounts and seek a loan modification.  (FAC ¶ 4.)  Plaintiffs also allege that Wells Fargo improperly issued a Notice of

16

1  Default on the property without first contacting plaintiffs to discuss their financial situation and

2  explore options to avoid foreclosure.  (Id. ¶ 33.)[7]

3        Therefore, apart from the fact that plaintiffs' claims for violation of the Fair Credit

4  Reporting Act, defamation, and false light exceed the scope of permissible amendment, they are

5  conclusory and inconsistent with substantial portions of plaintiffs' own pleading, and should be

6  dismissed on that additional basis.

7                    *Breach of Contract (Twelfth Cause of Action)*

8        In support of their breach of contract claim, plaintiffs allege, in conclusory fashion, that

9  around February 2008, Wells Fargo "refused to agree to reasonable debt reduction terms and

10  conditions sufficient to validate a viable loan adjustment plan" and that this somehow breached

11  Wells Fargo's contractual obligations under a prior loan modification agreement.  (FAC ¶¶ 82-83,

12  90-91.)

13        "The standard elements of a claim for breach of contract are: (1) the contract, (2)

14  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to

15  plaintiff therefrom."  Frontier Contracting, Inc. v. Allen Engineering Contractor, Inc., 2012 WL

16  1601659, at *4 (E.D. Cal. May 7, 2012) (unpublished) (citing Wall Street Network, Ltd. v. New

17  York Times Co., 164 Cal. App. 4th 1171, 1178 (2008).  "A written contract may be pleaded either

18  by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint

19  and incorporated therein by reference – or by its legal effect.  In order to plead a contract by its

20  legal effect, plaintiff must allege the substance of its relevant terms."  Id. (citing McKell v.

21  Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1489 (2006).

22  ////

23

---

24  [7] To be sure, in yet another section of the complaint, plaintiffs suggest that they were current as to
all their mortgage payments.  (FAC ¶ 5.)  Given the amount of cutting and pasting from other

25  pleadings and boilerplate that appear to have occurred in the drafting of the first amended
complaint, inconsistencies are not entirely surprising.  Significantly, however, such a contention

26  makes little sense in light of the gist of plaintiffs' complaint viewed as a whole, which appears to

27  be that Wells Fargo's allegedly deceptive loan made it impossible for plaintiffs to keep up with
their payments, which in turn led to Wells Fargo attempting to foreclose on the property without

28  providing plaintiffs with a good faith loan modification.

As an initial matter, the first amended complaint fails to even set forth the substance of the relevant terms of the contract allegedly breached by Wells Fargo, or any facts as to how Wells Fargo breached it.  Furthermore, plaintiffs' claim for breach of contract should be dismissed as time barred.  The statute of limitations for an action on a contract is four (4) years.  Cal. Civ. Proc. Code § 337.  Given that the breach was alleged to have occurred in February 2008, plaintiffs were required to bring any breach of contract claim by February 2012, rendering their present claim untimely.

*Declaratory/Injunctive Relief (Thirteenth Cause of Action)*

Plaintiffs seek a declaration that they are the true owners of the Property, that the Notice of Default allegedly issued by Wells Fargo be declared null and void, as well as certain forms of injunctive relief, based on Wells Fargo's alleged past wrongs.  "Declaratory and injunctive relief are not independent claims, rather they are forms of relief."  Lane v. Vitek Real Estate Industries Group, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010); Santos v. Countrywide Home Loans, 2009 WL 3756337, at *5 (E.D. Cal. Nov. 6, 2009).   In light of the court's recommendation that plaintiffs' other claims be dismissed, there is no independent cause of action on which remedies of declaratory and injunctive relief can be based, and these claims should therefore be dismissed.

*References to Improper Securitization/Improper Assignment*

Finally, plaintiffs' first amended complaint, like the original complaint, contains vague allegations and theories regarding "Improper Securitization" of the loan/note and "Improper Assignment" of the mortgage or deed of trust.  (Compare Orig. Compl. ¶ 18 with FAC ¶ 8.)  As the court has previously noted, these theories lack merit.

With respect to plaintiffs' allegations of improper assignment, judicially noticeable documents reveal that the original lender, World Savings Bank, FSB, later changed its name to Wachovia Mortgage, FSB, and then underwent a second name change to Wells Fargo Bank Southwest, N.A. before merging with Wells Fargo Bank, N.A., as discussed above.  (See RJN, Ex. C.)  Therefore, Wells Fargo simply succeeded to World Savings Bank, FSB's interest in plaintiffs' loan.  See Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) (employing a similar analysis with respect to transfers between these entities); Logvinov v.

18

1    Wells Fargo Bank, 2011 WL 6140995, at *2 (N.D. Cal. Dec. 9, 2011) (accord).

2           Furthermore, in regard to the allegations of improper securitization, courts have repeatedly

3    rejected claims asserting that a foreclosing entity lacks standing as a result of securitization of the

4    loan.  See Krug v. Wells Fargo Bank, N.A., 2011 WL 6182341, at *2 (N.D. Cal. Dec. 13, 2011)

5    ("Krug contends that as a result of his loan having been securitized and the particular manner in

6    which that was done, the entities now seeking to foreclose lack standing to do so, either because

7    they in fact do not have the legal right to enforce the security obligation, or because, at a

8    minimum, they have not established that they have such a right.  These same basic arguments

9    have repeatedly been rejected by the courts in this jurisdiction."); Hafiz v. Greenpoint Mortg.

10   Funding, Inc., 652 F. Supp. 2d 1093, 1043 (N.D. Cal. 2009) ("Hafiz asserts that defendants have

11   no right to foreclose...based on the erroneous theory that all defendants lost their power of sale

12   pursuant to the deed of trust when the original promissory note was assigned to a trust

13   pool...California law does not require possession of the note as a precondition to non-judicial

14   foreclosure under a deed of trust."); Logvinov, 2011 WL 6140995, at *3 ("The argument that

15   parties lose their interest in a loan when it is assigned to a trust pool or REMIC has been rejected

16   by numerous courts.").

17          Accordingly, any claims based on theories of improper assignment or securitization of the

18   loan should be dismissed.

19          Further Leave to Amend

20          A "district court's discretion to deny leave to amend is particularly broad where plaintiff

21   has previously amended the complaint."  Sisseton-Wahpeton Sioux Tribe v. United States, 90

22   F.3d 351, 355 (9th Cir. 1996).  In light of plaintiffs' pro se status, the court previously issued a

23   detailed order notifying plaintiffs of the deficiencies of their claims and gave them an opportunity

24   to cure the potentially viable claims by filing an amended complaint.  Instead, plaintiffs virtually

25   ignored the court's instructions and submitted a very similar shotgun pleading, which failed to

26   cure the identified deficiencies and merely added additional deficient claims beyond the scope of

27   permissible amendment.  In a similar vein, plaintiffs' opposition brief does not make any serious

28   attempt to address the arguments raised by Wells Fargo's motion, but instead repeats large

19

1   portions of the first amended complaint and adds a laundry list of citations to inapposite and

2   irrelevant cases.

3        If plaintiffs had made some effort to follow the court's instructions and cure the identified

4   deficiencies, the court would have been inclined to provide plaintiffs with further leave to amend.

5   However, in light of plaintiffs' second submission of a shotgun pleading, the court finds that

6   further leave to amend would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th

7   Cir. 1996).  Accordingly, the court recommends that plaintiffs' claims be dismissed with

8   prejudice.

9   CONCLUSION

10       In light of the foregoing, IT IS HEREBY ORDERED that:

11       1.  Wells Fargo's request for judicial notice (ECF No. 19) is GRANTED.

12       2.  The November 7, 2013 status (pre-trial scheduling) conference in this matter is

13            VACATED.  If necessary, the court will reset the date of that conference.

14       IT IS ALSO HEREBY RECOMMENDED that:

15       1.  Wells Fargo's motion to dismiss (ECF No. 18) be GRANTED.

16       2.  The action be DISMISSED WITH PREJUDICE.

17       3.  The Clerk of Court be directed to close this case and vacate all dates.

18       These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

20   days after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served on all parties and filed with the court within fourteen (14) days after service of the

24   objections.  The parties are advised that failure to file objections within the specified time may

25   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

26   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

27   ////

28   ////

1      IT IS SO ORDERED AND RECOMMENDED.

2    Dated:  September 17, 2013

3

4    KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28